**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

IN RE: DIAMOND SERVICES CORP      CASE NO.  6:20-CV-00408
AS OWNER OF THE DIAMOND 85

JUDGE ROBERT R. SUMMERHAYS

MAGISTRATE JUDGE WHITEHURST

<u>**MEMORANDUM RULING**</u>

The present matter before the Court is the Motion to Enforce Settlement filed by Petitioner in Limitation, Diamond Services Corp. [ECF No. 73].  Petitioners in Limitation Crosby Marine Transportation LLC and Crosby Tugs LLC ("Crosby") join in Diamond Services' motion.[1] Claimant Benjamin D. Cormier opposes the Motion to Enforce Settlement. As further explained below the Court GRANTS the motion in part and DENIES the motion in part.

**I.**

**BACKGROUND**

Claimant Benjamin Cormier alleges that he was injured while working as a surveyor on the barge DIAMOND 85 in the Gulf of Mexico. Cormier's injuries occurred while he was being transferred from the DIAMOND 85 to the tug M/V CROSBY QUEST in a basket operated by the crane operator on the DIAMOND 85.[2] Diamond Services is the owner of the DIAMOND 85.[3] Cormier alleges that DIAMOND's crane operator continued the transfer even though "the sea conditions were extremely rough."[4] Cormier alleges that DIAMOND's crane operator "over shot the Crosby tug, which was sterned up to the portside of the DIAMOND 85."[5] Cormier's basket

---

[1] ECF No. 75.
[2] ECF No. 11 at 5.
[3] ECF No. 12.
[4] *Id.*
[5] *Id.*

"skimmed off the top of the portside of the CROSBY QUEST before it dropped into the water."[6] Cormier "held onto the netting of the basket for safety and to prevent drowning once the basket was in the water."[7] DIAMOND's crane operator "then violently and intentionally yanked the basket up out of the water, with [Cormier] still holding on, before crashing the basket and [Cormier] hard onto the portside bulwark of the CROSBY tug."[8] Cormier contends that he was injured as a result of the crane operator's negligent actions in transferring him from the DIAMOND 85 to the CROSBY QUEST. Cormier was employed by Complete Logistical Services ("CLS") at the time of the incident. CLS was working as a subcontractor for Oceaneering International, Inc., which had entered into a contractual agreement with Diamond Services. Following the accident, Cormier commenced a state court action  in the 16th Judicial District Court for the Parish of St. Mary, Louisiana, against Diamond Services.[9]

On March 31, 2020, Diamond Services, as owner of the DIAMOND 85, filed the present limitation action pursuant to 46 U.S.C. § 30505. Cormier filed his admiralty answer and admiralty claim, asserting personal injury claims against Diamond Services under the General Maritime Law of the United States.[10] The Court subsequently entered a scheduling order and the case proceeded until March 18, 2021, when the Court received correspondence from Cormier's counsel that the case had been settled.[11] Accordingly, the Court entered a "60-Day Order" dismissing the case on March 19, 2021.[12]

---

[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *Benjamin D. Cormier v. Diamond Services Corporation*, No. 134491 (16th JDC St. Mary Parish, Louisiana).
[10] ECF No. 11 at 5.
[11] ECF No. 73-3 at 2.
[12] ECF No. 70.

On May 12, 2021, Cormier filed a Motion to Reopen/Reinstate Case, requesting that the Court vacate the 60-Day Order dismissing the case, set a new trial date, and issue a revised Scheduling Order. [13] Diamond Services and Crosby opposed the Motion to Reopen and filed the present motion to enforce the parties' settlement agreement. The Court granted Cormier's Motion to Reopen in part for the limited purpose of addressing the Motion to Enforce Settlement. [14]

The documents submitted by the parties in connection with the Motion to Enforce Settlement reflect email correspondence between Cormier's counsel and counsel for Diamond Services, as well as counsel for CLS. [15] This correspondence includes emails exchanged over several weeks in March 2021 that reflect the essential terms of the parties' settlement agreement, including settlement amounts and the scope of the release. [16] In that email exchange, the parties discussed certain conditions in the settlement, including Diamond Services' condition that the agreement was "contingent upon Diamond, Oceaneering, Complete Logistical Services, and Crosby receiving a full release and waiver of lien from Complete Logistical Services' compensation carrier, Signal Mutual Indemnity Association." [17] Counsel for Cormier responded that the terms outlined by Diamond Services "are accepted on behalf of Cormier." [18] In that same email, Cormier's counsel added a "caveat" regarding the identification of healthcare providers who provided services to Cormier and direct payments to those providers by CLS. [19] Counsel for Diamond Services responded by agreeing to Cormier's "caveat," and Cormier's counsel then responded "deal." [20]

---

[13] ECF No. 71.
[14] ECF No. 88.
[15] ECF Nos. 73-3 to 73-6; 79-1.
[16] *See*, *e.g.*, 79-1 at 4.
[17] *Id*.
[18] *Id*. at 6.
[19] *Id*. This caveat by Cormier's counsel appears to relate to a September 9, 2020, lumbar surgery performed on Cormier.
[20] ECF No. 73-2 at 1.

After reaching agreement on the terms of the settlement, the parties exchanged drafts of a written "Receipt, Release and Settlement Agreement."[21] These drafts included a section titled "Conditions to Settlement," which made the settlement and release of Cormier's LHWCA claims a condition to Diamond Services' and Crosby's execution of the settlement and payment of the settlement funds.[22] On April 9, 2021, Cormier's counsel sent an email to counsel for Diamond Services and Crosby stating that Cormier learned that he may have a "loose cervical anterior plate and likely two sequestered cervical . . . interbody spacers."[23] Cormier's counsel indicated that there "is risk of potential paralysis."[24] Cormier's counsel further indicated that as a result of this medical finding, Cormier was withdrawing from his LHWCA settlement with CLS and Signal, and that his withdrawal from the settlement with CLS and Signal "negates the current tort settlement with Diamond  and Crosby."[25] Through its Motion to Enforce Settlement, Diamond Services argues that any failure of the LHWCA settlement does not "negate" its tort settlement with Cormier.

## II.
### DISCUSSION

Diamond Services and Crosby argue that the parties' email exchanges in March 2021, culminating in the March 18, 2021 email from Cormier's counsel accepting the terms of the settlement with the response "deal," constitute an enforceable settlement agreement.[26] Cormier, however, contends that his settlement with Diamond Services and Crosby was contingent on the settlement of his Longshore and Harbor Workers' Compensation Act ("LHWCA") claims against his employer, CLS, and CLS's LHWCA insurer, Signal Mutual Indemnity Association, LTD

---

[21] ECF No. 73-4 at 4.
[22] *Id*. at 16.
[23] ECF No. 73-6 at 1.
[24] *Id*.
[25] *Id*. at 2.
[26] *See* ECF Nos. 73-1, 73-2 at 1.

("Signal").[27] Cormier contends that LHWCA settlements must first be approved by the Department of Labor ("DOL"), and that Cormier withdrew from his LHWCA settlement with CLS and Signal before DOL approval. Cormier additionally contends that he is entitled, as a matter of law, to withdraw from that settlement at any time. Cormier contends that he withdrew from the LHWCA settlement because a worsening of his medical condition would result in additional medical expenses. As a result of his withdrawal from the settlement with CLS and Signal, Cormier asserts that the tort settlement with Diamond Services and Crosby is unenforceable, because the LHWCA settlement and CLS's and Signal's release of Diamond Services and Crosby was a condition to the formation of his tort settlement with Diamond Services and Crosby.

Federal law governs the validity and enforceability of Cormier's putative settlement agreement with Diamond Services and Crosby because Cormier asserts claims based on general maritime law.[28] A settlement agreement is a contract and is thus governed by the federal common law of contracts.[29] However, because "'the federal common law of release is largely undeveloped,' and federal contract law is largely indistinguishable from general contract principles under state common law," courts often rely on treatises and state contract law cases, as well as federal case law.[30] For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms, and a meeting of the minds among the parties.[31] "An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror."[32] "Likewise, acceptance of an agreement is generally determined by 'outward, objective manifestations of assent,' and therefore 'an actual intention to accept is unimportant except in

---

[27] ECF No. 79 at 10.
[28] *In re DEEPWATER HORIZON*, 786 F.3d 344, 354–55 (5th Cir. 2015).
[29] *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992).
[30] *Id.* (quoting *Hisle v. Upchurch*, 797 F. Supp. 1509, 1518 (D. Ariz. 1992)).
[31] *Johnson v. BP Exploration & Prod.*, 786 F.3d 344, 355-59 (5th Cir. 2015).
[32] *In re DEEPWATER HORIZON*, 786 F.3d at 355.

those situations when the acts or words of the offeree are ambiguous.'"[33] "A district court may summarily enforce a settlement agreement if no material facts are in dispute."[34] The parties in the present case do not dispute the relevant, facts—the words and acts reflected in their email correspondence from March–April 2021. Rather, they dispute the legal effect of their words and acts. Accordingly, there is no need for an evidentiary hearing in this matter.

Here, the parties' "overt acts and words" are unambiguous and establish that they reached an agreement on all of the essential terms of a settlement of Cormier's tort claims against Diamond Services and Crosby. The terms of their agreement are reflected in the series of email exchanges between counsel for Diamond Services and Crosby and counsel for Cormier in March 2021.[35] While the parties did not ultimately sign a written settlement agreement containing specific release language, a written agreement is not a requirement for an enforceable settlement under federal law.[36] "A settlement is valid and enforceable even if it contemplates the parties signing a release at a later date," unless the parties explicitly provide that a valid contract will not be formed until the parties execute a formal, finalized agreement.[37] While the existence of a release may be material, "the precise terms and specific language of the release are not necessarily material."[38] Consequently, if "the scope of the release is disputed, . . . courts routinely enforce settlement

---

[33] *Bowers v. Abundant Home Health, LLC*, No. 3:16-cv-1314-C, 2021 WL 706783, at *6 (N.D. Tex. Jan. 25, 2021), report and recommendation adopted, 2021 WL 693652 (N.D. Tex. Feb. 23, 2021) (citing 2 Williston on Contracts, § 6:3: Objective manifestations generally control (4th ed.)).

[34] *In re DEEPWATER HORIZON*, 786 F.3d at 357.

[35] ECF Nos. 73-3 to 73-6; 79-1.

[36] *In re DEEPWATER HORIZON*, 786 F.3d at 355; *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)) ("Federal law does not require settlement agreements to be reduced to writing.").

[37] *Davison v. Bay Area Credit Serv., LLC*, No. 12–03411–CV–S–DGK, 2013 WL 627003, at *1 (W.D. Mo. Feb. 20, 2013) (citations omitted); *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 747–48 & n. 8 (Tex.App.—Corpus Christi 2014) (citations omitted); 15A C.J.S. COMPROMISE & SETTLEMENT § 21 (2014).

[38] *In re DEEPWATER HORIZON*, 786 F.3d at 357.

agreements even where the precise wording of a release has not been finalized" and one party ultimately does not sign the formal release documents.[39]

Cormier, however, argues that the settlement and release of his LHWCA claims against CLS and Signal—including DOL approval of that settlement and Signal's execution of a lien release—was a condition to the formation of his settlement agreement with Diamond Services and Crosby. "[T]he failure of a condition to occur excuses performance by the party whose performance is dependent on its occurrence."[40] But it does not necessarily prevent a contract from being formed. In *DEEPWATER HORIZON*, the Fifth Circuit noted that "'[a] settlement is valid and enforceable even if it contemplates the parties signing a release at a later date' unless parties explicitly provide a valid contract will not be formed until the parties execute a formal, finalized agreement." [41] There, the court concluded that correspondence exchanged by the parties created an enforceable settlement agreement.[42] The defendant had argued that the settlement agreement was not enforceable since the claimant had not executed a release.[43] The Fifth Circuit concluded that the requirement for a signed release was "a condition precedent to *payment*, not to contract formation."[44]

In the present case, the condition related to the settlement of Cormier's LHWCA claims against CLS and Signal appears in a March 11, 2021 email exchange between counsel for Diamond Services and Cormier's counsel. Diamond Service's counsel states that "[o]ur agreement is further

---

[39] *Id.*
[40] 13 Williston on Contracts, § 38:7 (4th ed. 2014).
[41] 786 F.3d. at 355 (quoting *Davison v. Bay Area Credit Serv., LLC*, No. 12-03411, 2013 WL 627003, at *1 (W.D. Mo. Feb. 20, 2013)).
[42] *Id.*
[43] *Id.*
[44] *Id.* at 356. Cormier argues that the *DEEPWATER HORIZON* case is distinguishable because it invoked the settlement of a mass tort case. The Court disagrees. In analyzing the settlement at issue, the *DEEPWATER HORIZON* court applied general principles of federal contract law governing the settlement of maritime claims. The court did not base its analysis on the fact that the case involved a mass tort settlement.

contingent upon Diamond, Oceaneering, [CLS] and Crosby receiving a full release and waiver of lien from [CLS'] compensation carrier [Signal]."[45] The parties, however, ultimately agreed on the material terms of their settlement, culminating in the March 18, 2021 email from Cormier's counsel stating simply "deal."[46] The parties then exchanged red-line drafts of a "Receipt, Release and Settlement Agreement."[47] A March 30, 2021 email from Cormier's counsel appears to accept a draft of the agreement sent to him on March 29, 2021: "your changes in the latest draft of release are okay with me."[48] Section Four of that draft agreement included a section titled "Conditions to Settlement," which states:

> The execution of this Receipt Release and Settlement Agreement by and between **Diamond, Crosby** and **Cormier** and the transmission of the Settlement Funds is contingent upon **Cormier** settling his claim with **CLS** and **Signal** for the provisions of Longshore and Harbor Workers' Compensation benefits pursuant to **33 U.S.C. § 908(i)** and obtaining a full written and executed release (subject to reasonable and customary terms and conditions) from **CLS** and **Signal** of any claim for reimbursement of medical expenses, demands, rights of subrogation, any claim under the Longshore and Harbor Worker's Compensation Act (**33 U.S.C. § 901** *et seq.*) or other claims by CLS and signal against **the Released Parties** relating to the Longshore and Harbor Workers' Compensation Act benefits demanded and/or provided to **Cormier**. If **Cormier** does not obtain the release by **CLS** and **Signal** of **the Released Parties** as set forth in this Section 4, **Diamond** and **Crosby** shall have no obligation to pay the Settlement Funds or execute this Agreement.[49]

As in *DEEPWATER HORIZON*, the language describing this contingency reflects a condition to *performance* and not a condition to the formation of the settlement agreement. Specifically, this provision states that the "execution" of the parties' tort settlement *and* the payment of the settlement funds is contingent on the completion and approval of the LHWCA settlement. The plain meaning of the term "execution" is the "act of carrying out or putting into effect."[50] With

---

[45] ECF No. 79-1 at 4.
[46] ECF No. 78-1 at 1.
[47] ECF No. 78-3 at 4.
[48] ECF No. 79-1 at 41.
[49] ECF No. 79-1 at 31 (bold in original).
[50] *Black's Law Dictionary* at 650 (9th Ed. 2009).

respect to a contract, the "[e]xecution of [a] contract includes performance of all acts necessary to render it complete as an instrument. . . ."[51] Moreover, this language denotes, specifically, a condition to performance by Diamond Services and Crosby as far as the payment of settlement funds. It does not condition *Cormier's* performance of his obligations under the tort settlement on the completion and approval of the LHWCA settlement. Accordingly, considering the record as a whole, the condition pertaining to the settlement and release of Cormier's LHWCA claim with CLS and Signal was a condition to *performance* and not to the *formation* of the parties' settlement agreement. Given that this is a condition to Diamond Services' and Crosby's performance, they may waive or otherwise excuse that condition to performance, which they appear to do in their briefing on the Motion to Enforce.[52] The Court therefore will grant the Motion to Enforce Settlement with respect to the settlement agreement between Cormier and Diamond Services and Crosby.

However, Cormier further argues that enforcing his tort settlement would violate the rights and protections afforded him by the LHWCA. Specifically, Cormier points to release language proposed by Diamond Services and Crosby that, he argues, would force him to release his LHWCA claims against CLS and Signal against his will and without DOL approval. Cormier is correct that Section 8(i) of the LHWCA provides that "no liability of any employer, carrier, or both for medical . . . benefits shall be discharged unless the application for settlement is approved by the Deputy Commissioner or Administrative Law Judge."[53] Moreover, LHWCA claimants have "the right to rescind unapproved settlements."[54] Accordingly, Cormier contends that Diamond Services and

---

[51] *Black's Law Dictionary* at 568 (6th ed. 1990) (*citing Travelers Ins. Co. v. Chicago Bridge & Iron Co.*, 442 S.W.2d 888, 895 (Tex. App. Houston [1st Dist.] 1969)).
[52] ECF No. 86 at 9-10.
[53] ECF No. 79 at 20 (quoting 33 U.S.C. § 908 (i)).
[54] *Oceanic Butler, Inc. v. Nordahl*, 842 F.2d 773, 778 (5th Cir. 1988).

Crosby "cannot force a release of [his] LHWCA benefits through a contractual tort settlement."[55] The Court agrees. But, as explained above, Diamond Services and Crosby can waive or otherwise excuse that condition to performance under their tort settlement with Cormier. However, if they do so, they cannot then enforce a release that effectively requires Cormier to relinquish his rights under the LHWCA. Accordingly, the Motion to Enforce Settlement will be denied to the extent that Diamond Services and Crosby seek to require Cormier to release his LHWCA claims—or to obtain a lien release from Signal—as a condition of the tort settlement.[56]

### III.
### CONCLUSION

For the reasons stated above, the Motion to Enforce Settlement [ECF No. 73] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to the settlement of Cormier's tort claims against Diamond Services and Crosby. The motion is DENIED to the extent it seeks to compel Cormier to release his LHWCA claims against CLS and Signal.

THUS DONE in Chambers on this 30th day of September, 2022.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[55] ECF No. 79 at 20.

[56] Given that Cormier has backed out of a settlement of his LHWCA's claims involving CLS and Signal, it appears that his tort settlement with Diamond Services and Crosby will not resolve the present case in its entirety. Accordingly, the Court, by separate order, will refer the case to the magistrate judge for a Rule 16 conference to determine the status of the case, including, if appropriate, the setting of a new trial date and associated pre-trial deadlines, and a determination of whether a settlement conference might aid in the resolution of the case.